1. Plaintiffs and defendant became indemnitors to the surety of a contractor on his agreement to purchase supplies from them, and on his inability to complete his contract plaintiffs and defendant, in order to reduce their liability, completed the work. Plaintiffs alleged that in carrying out the work they, at defendant's request, furnished merchandise and advanced money and rendered services to the amount of $7,322.76 above all moneys received by them on account of the contract, including the account against the contractor due plaintiffs at the time of his failure, after allowing a credit on his account for $4,000 paid to plaintiffs by the firm composed of plaintiffs and defendant after they commenced to complete the contract. *Held* that, in the absence of any allegation that any of the supplies were furnished or moneys advanced or services rendered to the contractor at defendant's request, the $4,000 was applicable only to the indebtedness of the firm of plaintiffs and defendant to plaintiffs, and not to the indebtedness of the contractor.

EQUITY—DISCRETION AS TO COSTS.

2. Under Section 566, B. & C. Comp., the costs and disbursements in equity may be imposed as discretion may suggest, as, each party to pay his own charges in the trial court, and one party to recover his costs and disbursements on appeal.

From Wasco: WILLIAM L. BRADSHAW, Judge.

Suit for an accounting by F. C. Sexton and W. E. Walther against Malcolm McInnis, in which defendant appeals from the decree. The decision was affirmed, but on rehearing the affirmance was changed to a modification.    MODIFIED.

For appellant there was a brief over the names of *W. H. Wilson* and *Menefee & Wilson*, with oral arguments by *Mr. William Hall Wilson* and *Mr. Frederick W. Wilson*.

For respondents there was a brief over the name of *Huntington & Wilson*, with oral arguments by *Mr. Bela Shaw Huntington*.

Decided 2 January, 1906.

## ON FIRST HEARING.

PER CURIAM. This is a suit for an accounting and settlement between parties who are sureties on a bond given by one Bertelson to indemnify the surety on his bond as a sub-contractor for a portion of the construction work on the Columbia & Northern Railway in the State of Washington. Bertelson commenced the performance of his contract, but defaulted therein, and the parties to this suit undertook to complete it. In doing so they met with considerable loss, and the object of this suit is to settle and adjust their liabilities as among themselves.

The questions involved are entirely of fact. The evidence is conflicting and irreconcilable, and no useful purpose can be served by a reference thereto in an opinion. It is sufficient to say that, after a careful and thorough examination of the testimony we concur in the conclusions of the trial court, and its decree will be affirmed.

Decided 21 August, 1906.

## ON REHEARING.

MR. JUSTICE HAILEY delivered the opinion of the court.

This is a suit for an accounting, growing out of certain transactions of the parties hereto in attempting to complete a contract for bridge construction and other work, begun by one Samuel Bertelson in 1902 as a subcontractor under Corey Bros. & Alden, who had a contract to build a railroad for the Columbia River & Northern Railroad Company from Lyle to Goldendale, in Klickitat County, Washington. Plaintiffs, W. E. Walther and F. C. Sexton, were hardware merchants in The Dalles, Wasco County, Oregon, doing business under the firm name of Sexton & Walther; and the defendant, Malcolm McInnis, was a member of the Lyle Trading Company, a partnership composed of Malcolm McInnis and A. M. McLeod, doing business at Lyle, Washington. Bertelson was required by Corey Bros. & Alden to furnish a $5,000 bond to insure the faithful performance of his work, and did so with the Aetna

Indemnity Company as surety thereon, and in order to secure
the indemnity company he furnished it with a bond, with W. E.
Walther, F. C. Sexton and Malcolm McInnis as sureties
thereon; and Walther, Sexton, McInnis and Bertelson entered
into an agreement providing, among other things, that in con-
sideration of the bond signed by them Bertelson should buy
certain supplies from the firm of Sexton & Walther and from
the Lyle Trading Company, and that French & Co., bankers,
of The Dalles, should act as trustees for themselves and Sexton
& Walther and the Lyle Trading Company of all funds to be
received for work done by Bertelson under his contract, and
hold such funds to secure the repayment of advances made to
him by them and said two firms and supplies furnished him by
said firms, and should also be secured by a chattel mortgage
covering all his bridge outfit, which agreement also contained
the following stipulation:

"It is further understood and agreed that in case the party
of the second part shall at any time fail to perform his contract
with said Corey Bros. & Alden, and thereby shall become liable
upon the bond given by the party of the second part and said
Aetna Indemnity Company to said Corey Bros. & Alden, then
and immediately the parties of the first part may at their
option take possession of all said mortgaged personal property
and all materials then owned by the party of the second part
procured by him to be used in fulfilling said contract with
Corey Bros. & Alden, and shall proceed to carry out and fulfill
the said contract. * * And in case the parties of the first part
shall elect to carry out said contract, and in so doing suffer any
loss, they may foreclose said chattel mortgage, and out of the
proceeds reimburse themselves for such loss."

Thereafter, on September 16, 1902, Bertelson failed to carry
out his contract with Corey Bros & Alden and surrendered his
property to the plaintiffs and defendant, who, under the firm
name of Sexton, Walther & McInnis, undertook to fulfill his
contract and complete the work begun by him, and in so doing
incurred liabilities which finally resulted in this suit for an
accounting between them.

At the time Bertelson surrendered his property to the plain-
tiffs and defendant he was indebted to the firm of Sexton &

Walther in a large sum, and to the Lyle Trading Company
$807.50. The plaintiffs claim that at the time of the execu-
tion and delivery of the bond to the Aetna Indemnity Company
it was understood and agreed that as between them as sureties
thereon the plaintiffs should bear one half and no more of any
liability arising upon or by reason of such bond, and that the
defendant should bear one half of such liability; but the defend-
ant denies this and claims that the bond was executed by the
sureties as individuals and not otherwise, and that any liability
arising thereon should be borne by them equally—that is, one
third each. It is alleged that when Bertelson failed to perform
his contract he surrendered to the plaintiffs and defendant all
the property then used by him in carrying out the work and
requested them to take full charge of and complete the work
and furnish the materials required by the contract, and that
they did so because of said indemnity bond signed by them as
sureties to the Aetna Indemnity Company, and to reduce their
liabilities by reason of said bond, and that in so doing the
plaintiffs, at the request of defendant, furnished and delivered
supplies and advanced moneys and rendered services aggregat-
ing a large sum, and that the Lyle Trading Company furnished
supplies and advanced moneys on account of said contract to
a large sum, and that the defendant has assumed all said
account of the Lyle Trading Company, and that plaintiffs and
defendant cannot agree as to the amount due each party out
óf $2,346.12 arising from their work under the said contract
and now in the hands of French & Co., trustees, and all ask for
an accounting. The plaintiffs claim that the defendant is liable
for one half of the indebtedness incurred by the firm of Sexton,
Walther & McInnis, and also liable for one half of the debts
due from Bertelson on September 16, 1902, when he failed,
and that they are responsible for the other half of all such
indebtedness, and that $4,000 paid them by the firm of Sexton,
Walther & McInnis during the course of their work, and applied
upon the indebtedness of Bertelson to them, was properly
applied, while the defendant contends that he is liable for only
one third of the indebtedness of the firm of Sexton, Walther &

McInnis and for none of the debts of Bertelson, and that the $4,000 paid to the plaintiffs should have been credited by them on their account against Sexton, Walther & McInnis, and not on the Bertelson account. The lower court entered a decree in accordance with the claims of the plaintiffs, awarding them all the money on hand, and a decree against the defendant for $1,692.46 and costs, from which this appeal was taken.

1. Upon petition for rehearing filed herein the principal point urged is the application of the $4,000 paid to Sexton & Walther by the firm of Sexton, Walther & McInnis. The plaintiffs alleged:

"That, in carrying out the work and furnishing materials necessary to complete the contract of said Bertelson with Corey Bros. & Alden, the plaintiffs, at the request of the defendant, furnished and delivered goods, wares and merchandise, and advanced moneys and rendered services in the aggregate to the amount of $7,322.76 over and above all moneys received by the plaintiffs from and on account of said contract"

which amount includes the account of Bertelson due Sexton & Walther at the time of his failure, after allowing a credit on his account for $4,000 paid to them by the firm of Sexton, Walther & McInnis. It will be noted that this allegation is confined to the goods, wares, and merchandise furnished and delivered and moneys advanced and services rendered by the plaintiffs, at the request of defendant, to complete the contract of Bertelson. It does not allege that any of such supplies were furnished or moneys advanced or services rendered to Bertelson at the request of defendant, but limits such matters to the completion of the contract after Bertelson had failed, and there is no allegation in the complaint that the firm of Sexton, Walther & McInnis assumed the indebtedness of Bertelson to the firm of Sexton & Walther or to the Lyle Trading Company. The $4,000 paid to the plaintiffs by the firm of Sexton, Walther & McInnis should, therefore, have been applied upon the indebtedness of that firm to Sexton & Walther, and not upon the indebtedness of Bertelson to them, and the decree of the lower court will have to be modified to that extent, and the indebted-

ness of Bertelson to the firm of Sexton & Walther and to the Lyle Trading Company disregarded.

2. Upon the question of the liabilities of the respective parties hereto for the debts of the firm of Sexton, Walther & McInnis, we think that the pleadings and evidence in the case warrant the findings of the lower court that the plaintiffs are liable for one half thereof, and the defendant the other half, and a decree will be entered here in accordance with this opinion, providing, however, that each party shall pay his own costs in the lower court, and awarding to defendant his costs upon this appeal.                                      MODIFIED.

Argued 12 July, decided 21 August, 1906.
### STATE *v.* QUEN.
86 Pac. 791.

CRIMINAL LAW—THREATS BY THIRD PERSON.

In doubtful cases evidence of threats by one of several persons acting under a general plan is admissible for the purpose of showing the feelings of the conspirators, and aiding the ascertainment of truth from the conflicting claims, when the threats are reasonably connected in time and circumstance with the principal event; but evidence of threats made by a third person against the prosecuting witness cannot be imputed to defendant, though made in his presence, unless some concert of purpose is shown between such third person and defendant: *State* v. *Ching Ling*, 16 Or. 419, distinguished.

From Multnomah: JOHN B. CLELAND, Judge.

Wong Chow Quen appeals from a conviction of simple assault.                                                  REVERSED.

For appellant there was a brief over the names of *Long & Sweek* and *William Wallace Banks*, with an oral argument by *Mr. Joel Minor Long* and *Mr. Banks*.